UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. JOHN KARVELAS, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 18-11260-LTS |
| TUFTS SHARED SERVICES, INC. d/b/a TUFTS MEDICAL CENTER, INC. et al., | ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 31)

December 17, 2019

SOROKIN, J.

Pending before the Court is a motion to dismiss brought jointly by Defendant Tufts Medical Center ("TMC") and individual Defendants Leslie Lussier, Theresa Hudson-Jinks, and Albert Fantasia. Relator[1] John Karvelas' Complaint alleges five counts: (1) retaliation in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count I); (2) retaliation in violation of the Massachusetts False Claims Act ("MFCA"), Mass. Gen. Laws ch. 12 § 5J (Count II); (3) wrongful termination in violation of public policy (Count III); (4) retaliation against a licensed health care provider in violation of Mass. Gen. Laws ch. 149 § 187(b) (Count IV); and

---

[1] "[T]he FCA's qui tam provisions allow a private individual or 'relator' to file a lawsuit alleging FCA violations on behalf of the United States." U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 225 (1st Cir. 2004). A "relator" is "[a] party in interest who is permitted to institute a proceeding in the name of the People or the Attorney General when the right to sue resides solely in that official." Black's Law Dictionary 1289 (6th ed. 1990).

1

(5) breach of the implied covenant of good faith and fair dealing (Count V). Doc. No. 20 at 27–33.

I. BACKGROUND[2]

John Karvelas was employed as a respiratory therapist at Tufts Medical Center ("TMC") in Boston, Massachusetts, from December 2005 until November 2016. Doc. No. 20 ¶ 5. Karvelas' claims arise out of allegations that TMC engaged in several forms of fraudulent billing practices, which Karvelas says violate the FCA, as well as allegedly unlawful kickbacks. The alleged billing irregularities include duplicative billing, id. ¶¶ 39–42, billing for services not provided, id. ¶ 43, unbundling of services, id. ¶¶ 44–45, billing for services that were not reimbursable for failing to comply with Medicare standards, id. ¶¶ 46–50, and upcoding of services, id. ¶¶ 51–53. Meanwhile, the alleged kickbacks relate to Tufts' replenishment and restocking of drugs and supplies for EasCare, an ambulatory service provider that contracted with Tufts to bring patients to its medical center. Id. ¶¶ 55–58.

More importantly to Karvelas' five claims in this suit, he alleges that he "raised concerns" about TMC's allegedly fraudulent billing practices to his superiors. Id. ¶¶ 64–67. Specifically, he alleges that on or about October 14, 2016, he raised concerns about "the billing of subsequent-day ventilator charges on the same day as [an] initial charge," a practice he alleges constituted "over-billing" of Medicare, "as well as other billing concerns, to the individual responsible for the Hospital's electronic billing system." Id. ¶ 65. He also alleges that on or about October 28, 2016, he raised concerns regarding patient safety to Defendant Theresa Hudson-Jinks, TMC's Vice President of Patient Care Services, as well as Assistant Director of Respiratory Care Donna Kelly, only to be "yelled at" and for no further action to be taken. Id. ¶¶

---

[2] The Court recounts facts alleged in Karvelas' Amended Complaint. Doc. No. 20.

66–67.  He further alleges that at some point during September and October 2016, he "was interviewed by the [Drug Enforcement Agency]" and went to the Office of the Inspector General for the Department of Health and Human Services to discuss his concerns about TMC's allegedly fraudulent billing practices.  Id. ¶¶ 77.  Additionally, Karvelas alleges that the Defendants labeled him a "troublemaker" and ultimately terminated his employment on November 16, 2016, in retaliation for "his efforts to expose and reform Tuft's [sic] fraudulent practices."  Id. ¶¶ 67–68, 80.  Additionally, he alleges that he was "subjected to repeated acts of harassment, discrimination, and intimidation" both "[b]efore and after his termination."  Id. ¶ 70.

Before turning to the merits of the pending motion, the Court notes what is not at issue: Karvelas' suit does not present any allegations of fraudulent billing practices or unlawful kickbacks.  Rather, his claims are limited in scope to allegations about the circumstances of his termination from TMC.

II.     LEGAL STANDARDS

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must provide fair notice to the defendants and state a facially plausible legal claim."  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The pleader must "'show' an entitlement to relief" by including in the complaint "enough factual material 'to raise a right to relief above the speculative level'" if the facts alleged are accepted as true.  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a).  In assessing whether a complaint withstands a Rule 12(b)(6) challenge, courts "employ a two-pronged approach."  Ocasio-Hernandez, 640 F.3d at 12.

First, statements in the complaint that amount to "threadbare recitals of the elements of a cause of action" are identified and disregarded.  Id. (quotation marks and brackets omitted).  So,

too, are "bald assertions, subjective characterizations and legal conclusions." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (quotation marks omitted). As the First Circuit has warned, such statements "are a danger sign that the plaintiff is engaged in a fishing expedition." Id. "[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." Id. (emphasis in original).

Second, "[n]on-conclusory factual allegations" are "treated as true, even if seemingly incredible." Id. If such allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and thereby "state a plausible, not a merely conceivable, case for relief," then the motion to dismiss must be denied. Id. (quotation marks omitted); accord Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted).

III. DISCUSSION

First, the Court considers Karvelas' claims against individual Defendants Fantasia, Lussier, and Hudson-Jinks.

A. Claims Against the Individual Defendants

At the outset, the Court notes that the Complaint is devoid of any allegations, factual or otherwise, regarding Defendant Albert Fantasia. The Complaint simply does not plausibly state a claim against him. Thus, the motion to dismiss is ALLOWED as to Defendant Fantasia. The

claims against Fantasia are also DISMISSED for the reasons resulting in dismissal of all claims against the other individual defendants.

The Complaint also fails to state a claim against individual Defendants Lussier and Hudson-Jinks. The Court now explicates why this is so for each of the Complaint's five counts.

      1.      Count I: FCA Retaliation

Defendants Lussier and Hudson-Jinks move to dismiss Karvelas' FCA retaliation claim, arguing that "[c]ourts have held that [section 3730(h)] claims do not apply against defendants in their individual capacity." Doc. No 32 at 4 (citing Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 66 (D. Mass. 2002)). Defendants accurately portray the settled state of federal law before 2009, when "federal courts . . . uniformly held that the FCA did not impose individual liability for retaliation claims." U.S. ex rel. Strubbe v. Crawford Cty. Mem'l Hosp., 915 F.3d 1158, 1167 (8th Cir. 2019), cert. denied sub nom. U.S. ex rel. Strubbe v. Crawford Cty. Mem. Hosp., No. 19-225, 2019 WL 6257418 (U.S. Nov. 25, 2019); U.S. ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc., 322 F.3d 738, 740 (D.C. Cir. 2003) (holding that an individual corporate director was not an "employer" for purposes of section 3730(h) liability). However, after the enactment of a 2009 amendment, "it is less clear that the statute still applies only to employers now that Congress has removed the statute's reference to retaliation 'by [an] employer.'" Aryai v. Forfeiture Support Assocs., 25 F. Supp. 3d 376, 385 (S.D.N.Y. 2012) (quoting Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, § 4(d), 123 Stat. 1617, 1624–25). As amended, the statute now reads:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter.

5

31 U.S.C. § 3730(h)(1).

Given the amended statutory text, some courts have been hesitant to reflexively dismiss FCA retaliation claims brought against defendants in their individual capacities. See, e.g., Laborde v. Rivera-Dueno, 719 F. Supp. 2d 198, 205 (D.P.R. 2010) (declining to dismiss an FCA retaliation claim "[i]n the absence of specific First Circuit guidance holding that individual liability does not exist in FCA retaliation claims, and in light of the fact that the persuasive authority on the issue relies upon an outdated version of the statute"); U.S. ex rel. Moore v. Community Health Servs., Inc., 2012 WL 1069474, at * 9 (D. Conn. Mar. 29, 2012); Weihua Huang v. Rector & Visitors of Univ. of Virginia, 896 F.Supp.2d 524, 548 n.16 (W.D. Va. 2012). A slew of federal courts, however, have held that the "2009 Amendment to § 3730(h) did not expand the universe of potential defendants beyond entities that had some employment, agency or contractual relationship with the plaintiff." Irving v. PAE Gov't Servs., Inc., 249 F. Supp. 3d 826, 834 n.6 (E.D. Va. 2017) (collecting cases).

The Court is persuaded by the latter approach. This is so for several reasons. First, the amended provision includes no textual indication that liability extends to defendants in their individual capacities. See Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) ("Statutory interpretation, as we always say, begins with the text. . ."). Prior to 2009, federal courts were unanimous in their rejection of individual liability. Given the Court's obligation to "presume [that] Congress is aware of judicial interpretations of existing statutes when it passes new laws," United States v. Place, 693 F.3d 219, 229 (1st Cir. 2012), the text's silence is best understood as indicative of stasis, not disruption. See Howell v. Town of Ball, 827 F.3d 515, 530 (5th Cir. 2016) ("Adopting [plaintiff's] argument [regarding the 2009 Amendment to § 3730(h)] means concluding that Congress overturned [longstanding] precedent, not by the insertion of express

6

language expanding liability, but only by mere implication."), cert. denied sub nom. Town of Ball, La. v. Howell, 137 S.Ct. 815 (2017); see also H. R. Rep. No. 111–97, at 7 (House Report on the 2009 amendments referencing prior case law). Second, "the primary purpose of the 2009 amendment to the FCA's anti-retaliation provision was to expand what formerly was a cause of action only for an 'employee' into a cause of action for an 'employee, contractor, or agent.'" Aryai, 25 F. Supp. 3d at 386. In fact, while Congress expressly intended for the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover [classes of] workers . . . who are not technically 'employees,'" H. R. Rep. No. 111–97, at 14 (2009), the legislative history "contains no similar statement of intent to expand the scope of liability to include individuals." Aryai, 25 F. Supp. 3d at 386. Finally, Congress' omission of the word "employers" is more naturally seen as "a grammatical necessity of expanding the statute's protections to cover a 'contractor' or 'agent' in addition to an 'employee.'" Aryai, 25 F. Supp. 3d at 387; accord U.S. ex rel. Abou–Hussein v. Sci. Applications Int'l Corp., No. 2:09-1858-RMG, 2012 WL 6892716, at *3 n.4 (D.S.C. May 3, 2012), aff'd on other grounds, 475 F. App'x 851 (4th Cir. 2012).

Thus, notwithstanding the 2009 amendment to § 3730(h), the Court agrees with Defendants that FCA retaliation claims do not lie against defendants in their individual capacities. Accordingly, the motion to dismiss Count I is ALLOWED as to Defendants Lussier and Hudson-Jinks.

2. Count II: MFCA Retaliation

Defendants Lussier and Hudson-Links similarly move to dismiss Karvelas' parallel state law retaliation claim, brought under Mass. Gen. Laws ch. 12 § 5J. Case law construing the MFCA's provisions is sparse. Sheppard v. 265 Essex St. Operating Co., LLC, 299 F. Supp. 3d

7

278, 283 (D. Mass. 2018). "However, the MFCA was modeled on the similarly worded [FCA]"; thus, Massachusetts courts "look for guidance to cases and treatises interpreting the [f]ederal [FCA]." Scannell v. Attorney Gen., 872 N.E.2d 1136, 1138 (Mass. App. Ct. 2007). Nonetheless, "[w]hile federal cases are instructive, they are not necessarily dispositive when interpreting the MFCA, as there are important differences between the liability provisions in the statutes." Mass. v. Schering-Plough Corp., 779 F. Supp. 2d 224, 234 (D. Mass. 2011).

Before 2012, Mass. Gen. Laws ch. 12 § 5J, by its express terms, only subjected "employers" to liability, just like its federal counterpart. See 2000 Mass. Legis. Serv. ch. 159 § 18 ("No employer shall discharge, demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against an employee . . .") (emphasis added). However, following the 2009 amendment to the FCA discussed above, the MFCA was similarly amended to expand its scope of protection. See Joseph M. Makalusky, Blowing the Whistle on the Need to Clarify and Correct the Massachusetts False Claims Act, 94 Mass. L. Rev. 41, 62 (2012) (urging the Massachusetts legislature to revisit the MFCA in light of the 2009 FCA amendments because "section 5J continually refers to 'employer' and 'employee,' while the amended FCA expressly reaches beyond mere employer-employee relationships."). As amended, the relevant subsection of the MFCA now reads:

> An employee, contractor or agent shall be entitled to all relief necessary to make that employee, contractor or agent whole if that employee, contractor or agent is discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or a person associated with the employee, contractor or agent in furtherance of an action under sections 5B to 5O, inclusive, or other efforts to stop a violation of said sections 5B to 5O, inclusive.

Mass. Gen. Laws ch. 12 § 5J(2).

Notwithstanding the amended statutory text, the Court is persuaded that § 5J (still) does not enable claims against defendants in their individual capacities. First, the relief provision of the statute explicitly envisions mandatory remedies that can only be carried out by an employer. See Mass. Gen. Laws ch. 12 § 5J(3) (providing that "relief under paragraph (2) shall include reinstatement with the same seniority status the employee, contractor or agent would have had but for the discrimination"). Indeed, federal courts interpreting the scope of the FCA's anti-retaliation provisions have been similarly guided by the FCA's mandatory remedies. See, e.g., Yesudian ex rel. U.S. v. Howard Univ., 270 F.3d 969, 972 (D.C. Cir. 2001) (rejecting individual capacity liability under the FCA because "all the § 3730(h) remedies are phrased in mandatory language (the employee 'shall be entitled,' etc.) and yet include remedies such as reinstatement, which a mere supervisor could not possibly grant in his individual capacity"); Aryai, 25 F. Supp. 3d at 387 (noting that "[t]he same logic remains sound even after the 2009 amendment; interpreting amended section 3730(h) to provide for individual liability is inconsistent with the mandatory remedy of reinstatement."). Moreover, given the legislature's silence on the individual liability of non-employers like Defendants Lussier and Hudson-Jinks, the omission of the word "employer" in amended § 5J(2) is best understood as a product of the same "grammatical necessity" that motivated Congress' drafting choices in 2009. Id.

Therefore, the Court agrees with Defendants that MFCA retaliation claims—like FCA retaliation claims—do not lie against defendants in their individual capacities; thus, the motion to dismiss Count II is ALLOWED as to Defendants Lussier and Hudson-Jinks.

    3.     Counts III, IV, and V

For similar reasons, the remaining three counts must also be dismissed against Defendants Lussier and Hudson-Jinks. First, "to raise a cognizable [wrongful termination

against public policy] claim, [Karvelas] must show that [his] discharge falls within the limited exception prohibiting employers from firing at-will employees 'for reasons that violate public policy.'" Kelley v. Lawrence Pub. Sch., No. 16-CV-11116-DJC, 2018 WL 6833508, at *2 (D. Mass. Dec. 27, 2018), appeal dismissed, No. 19-1110, 2019 WL 3337119 (1st Cir. July 18, 2019) (quoting Flesner v. Technical Commc'ns Corp., 575 N.E.2d 1107, 1110 (Mass. 1991)) (emphasis added). As Defendants Lussier and Hudson-Jinks were not Karvelas' employer, their motion to dismiss Count III is ALLOWED.

Likewise, the Massachusetts statute that proscribes retaliatory actions against health care providers, by its express terms, only allows for claims against a "health care facility." Mass. Gen. Laws ch. 149 § 187. For purposes of the statute, a "health care facility" is defined as "an individual, partnership, association, corporation or trust or any person or group of persons that employs health care providers." Id.; see also O'Connor v. Jordan Hosp., No. CIV.A. 10-11416-MBB, 2012 WL 1802308, at *8 (D. Mass. May 16, 2012) (holding that "individual defendants cannot be sued" under Mass. Gen. Laws ch. 149 § 187). Therefore, the motion to dismiss Count IV is ALLOWED as to Defendants Lussier and Hudson-Jinks.

Finally, only "employers (in varying contexts and subject to strict limitations) have been held liable for breach of the implied covenant of good faith and fair dealing" in the employment context. Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005). Given that Karvelas' claim arises out of his previous employment relationship with TMC, and that there is no allegation that Defendants Lussier and Hudson-Jinks were parties to that employment relationship, the motion to dismiss Count V is ALLOWED as to Defendants Lussier and Hudson-Jinks.

B. Claims Against TMC

Having dismissed all five claims as to the individual Defendants, the Court now considers the claims as to Defendant TMC.

1. Counts I and II: FCA and MFCA Retaliation

"To prevail on an FCA retaliation claim, a plaintiff must show that 1) the employee's conduct was protected under the FCA; 2) the employer knew that the employee was engaged in such conduct; and 3) the employer discharged or discriminated against the employee because of his or her protected conduct." Guilfoile, 913 F.3d at 187–88 (1st Cir. 2019) (internal quotation marks omitted). "The First Circuit broadly construes protected activity under the FCA to include 'investigating matters which are calculated, or reasonably could lead, to a viable FCA action.'" United States v. Medtronic, Inc., 189 F. Supp. 3d 259, 280 (D. Mass. 2016) (quoting Karvelas, 360 F.3d at 236). "[I]n other words, investigations, inquiries, testimonies or other activities that concern the employer's knowing submission of false or fraudulent claims for payment to the government." Karvelas, 360 F.3d at 237. However, investigation of "regulatory failures" that do not involve "investigation or reporting of false or fraudulent claims" is not protected. Id. Notably, "proving a violation of § 3279 [the false claims provision] is not an element of a § 3730(h) [retaliation] cause of action." Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 416 n.1 (2005). Therefore, an FCA retaliation claim "need not meet the heightened pleading requirements of Rule 9(b)," Karvelas, 360 F.3d at 238 n.23, and may survive a motion to dismiss even when the pleadings are "too vague to meet the Rule 9(b) pleading standards for a qui tam action." Id. at 238.

While MFCA retaliation case law is limited, courts construing both statutes have noted that the "retaliation provision of the MFCA [and its FCA counterpart are] nearly identical with

respect to the scope of protected conduct." U.S. v. Univ. of Mass., Worcester, 80 F. Supp. 3d 296, 304 (D. Mass. 2015), aff'd in part, appeal dismissed in part, 812 F.3d 35 (1st Cir. 2016). Thus, courts demand that plaintiffs prove the same three elements for FCA and MFCA retaliation claims. See Sheppard, 299 F. Supp. 3d at 284 (setting out the elements of a retaliation claim under the MFCA).

The Court concludes that Karvelas' Complaint does not contain plausible allegations that Karvelas was engaged in protected conduct under the FCA. First, the majority of Karvelas' alleged complaints to his TMC supervisors—including those related to patient safety and regulatory compliance—do not constitute protected conduct. See Karvelas, 360 F.3d at 237 (noting that "nearly all of Karvelas's statements concerning his alleged activities . . . suggest that Karvelas witnessed and reported problems concerning the hospital's alleged failure to comply with patient care standards," and holding that "[s]uch conduct, without more, does not constitute protected conduct under the FCA"); id. ("Although correcting regulatory problems may be a laudable goal, it is not actionable under the FCA in the absence of actual fraudulent conduct.") (internal quotation marks omitted); Medtronic, 189 F. Supp. 3d at 280 (holding that allegations about the "impropriety of performing [certain] procedures without the assistance of trained medical staff are divorced from any false claims and thus do not constitute FCA-protected activity."). While Karvelas additionally alleges that he "raised concerns about the billing of subsequent-day ventilator charges" to TMC supervisors, Doc. No. 20 ¶ 65, his Complaint is "unadorned by any factual assertions that might lend it plausibility." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). Indeed, Karvelas' provides no detail about the substance of his conversation with TMC supervisors, neglecting to provide any factual allegations about the specific "concerns" that he raised. Doc. No. 20 ¶ 65. This oversight is

12

especially problematic given that Karvelas' factual allegations concerning fraudulent billing either occurred after his November 2016 termination, id. ¶ 42 (alleging fraudulent billings that occurred in January and February 2017) or significantly predate his termination. See id. ¶ 41 (alleging a conversation with Karvelas' neighbor about potential double billing that occurred in July 2012). Absent factual allegations, the Court is unable to conclude that Karvelas has plausibly alleged that he was engaged in protected conduct under the FCA. Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Accordingly, the motion to dismiss Counts I and II is ALLOWED as to Defendant TMC.

2. Employment Contract Claims

In addition to his FCA and MFCA retaliation claims, Karvelas' Complaint includes two common law employment contract claims: (1) that his termination was wrongful in violation of public policy (Count III); and (2) that his termination constituted a breach of the implied covenant of good faith and fair dealing (Count V). Even drawing all reasonable inferences in Karvelas' favor, the facts as alleged are insufficient for either claim to survive a motion to dismiss.

Under Massachusetts law, an employer has "an unfettered right to discharge" an at-will employee like Karvelas. Cochran v. Quest Software, Inc., 328 F.3d 1, 7 (1st Cir. 2003) (applying Massachusetts law). However, "[a]s an exception to the general rule that an employer may terminate an at-will employee at any time with or without cause, [Massachusetts courts] have recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy." King v. Driscoll, 638 N.E.2d 488, 492 (Mass. 1994). Under the public policy exception, "[r]edress is available for employees who

are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 533 N.E.2d 1368, 1371 (Mass. 1989).

Massachusetts courts have consistently held that at-will employees who are fired after internally reporting concerns about "patient rights, patient care, and billing" are not protected by the public policy exception. Martinez v. New England Med. Ctr. Hosps., Inc., 307 F. Supp. 2d 257, 266 (D. Mass. 2004). Thus, the public policy exception does not encompass Karvelas' allegations that he "brought many instances of serious reportable events to the attention of hospitals [sic] administration." Doc. No. 20 ¶ 87; cf. Smith-Pfeffer, 533 N.E.2d at 1371–72 (holding that "internal matters . . . could not be the basis of a public policy exception to the at-will rule"). And while Karvelas does allege that he externally reported a 2014 "murder" to the Massachusetts Department of Public Health in September 2016, "[a] plaintiff in these kinds of cases . . . must provide evidence—not mere assertion or speculation—supporting his claim that he was terminated for reporting criminal conduct[.]" Hinchey v. NYNEX Corp., 144 F.3d 134, 145 (1st Cir. 1998) (applying Massachusetts law). Here, "there is nothing in the record demonstrating that [Karvelas] was terminated for reporting criminal conduct." Id. Thus, even drawing all reasonable inferences in his favor, Count III of Karvelas' complaint contains insufficient factual allegations to survive a motion to dismiss.

Karvelas' claim that his termination constituted a breach of the implied covenant of good faith fares no better. "Massachusetts recognizes a claim for breach of the implied covenant of good faith and fair dealing when a plaintiff shows that an employer's reason for discharge was contrary to public policy[.]" Bhawan v. Fallon Clinic, Inc., 5 F. Supp. 2d 64, 67 (D. Mass. 1998).

14

As Karvelas' complaint does not plead adequate factual allegations to state a claim that his termination was in violation of public policy, his claim under the implied covenant of good faith and fair dealing also fails.

Accordingly, the motion to dismiss Counts III and V is ALLOWED as to Defendant TMC.

3. <u>Count IV: Retaliation Against Health Care Providers</u>

To state a claim under Mass. Gen. Laws ch. 149 § 187(b)(3), a plaintiff must establish that (1) he objected to, or refused to participate in, an activity, policy or practice, that (2) he reasonably believed to be in violation of a law, rule, regulation, or professional standard of practice, (3) which he reasonably believed posed a risk to public health, and (4) he was retaliated against as a result. <u>Romero v. UHS of Westwood Pembroke, Inc.</u>, 893 N.E.2d 355, 359 (Mass. App. Ct. 2008). "The statute is specific to the health care industry and is designed to safeguard patient care by protecting the rights of health care providers who expose deficiencies in care that violate laws or regulations or professional standards that endanger public health." <u>Commodore v. Genesis Health Ventures, Inc.</u>, 824 N.E.2d 453, 460 (Mass. App. Ct. 2005). While courts have questioned whether the statute's reference to public health "extends only to patient care, or more broadly to the integrity of the process of financial reimbursement for that patient care" <u>Dermesropian v. Dental Experts, LLC</u>, 718 F. Supp. 2d 143, 150 (D. Mass. 2010) (quoting <u>Davis v. Cape Cod Hosp.</u>, 885 N.E.2d 173 (Mass. App. Ct. 2008)), Massachusetts courts agree that "[f]or purposes of this section, a plaintiff's belief must be objectively reasonable." <u>Id.</u> at 359 n.3.

Here, Karvelas' Complaint does not contain sufficient factual allegations that his beliefs are "objectively reasonable" to survive a motion to dismiss, either as to the lawfulness of TMC's

15

activities, policies, or practices or as to whether TMC's actions posed a risk to public health. As TMC notes, Karvelas' Complaint contains no support "beyond conclusory assertions," Doc. No. 32 at 11, that any of TMC's billing practices violated any "law, rule, regulation, or professional standard of practice," nor does his Complaint provide any non-conclusory facts tending to show that services rendered were medically unnecessary or harmful to patients. Mass. Gen. Laws ch. 149 § 187(b)(3). And while Karvelas' Complaint alleges that patients have been "murdered" and "committed suicide," Doc. No. 20 ¶ 87, his Complaint contains no additional facts that render these allegations "objectively reasonable." Romero, 893 N.E.2d at 359 n.3. "[W]hile a complaint need not include evidentiary detail, it must nonetheless allege a factual predicate concrete enough to warrant further proceedings." Karvelas, 360 F.3d at 240 (internal quotation marks omitted). Because his factual allegations do not meet even "the liberal pleading requirements of Rule 8(a)," id., the motion to dismiss Count IV as to Defendant TMC is ALLOWED.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss (Doc. No. 31) is ALLOWED. As the Court's conclusion as to Counts I and II against Defendant TMC turns on plausibility, those claims are DISMISSED WITHOUT PREJUDICE. Karvelas may, within 21 days of the issuance of this Order, amend his Complaint with respect to Counts I and II against Defendant TMC.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge
